```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


GOTHAM DISTRIBUTING CORP.      :      CIVIL ACTION
                               :
     v.                        :
                               :      NO. 14-CV-6165
UNITED PARCEL SERVICE CO.,     :
INC., ET AL.                   :
```

**MEMORANDUM**

Joyner, J.                                                July 27, 2016

Before the Court are Defendants' Motions for Summary Judgment (Doc. Nos. 40, 41), Plaintiff's Omnibus Response in Opposition thereto (Doc. No. 46), Defendants' Replies in Further Support thereof (Doc. Nos. 49, 51), and Plaintiff's Sur-reply in Further Opposition thereto (Doc. No. 54).[1] For the reasons below, the Court DENIES the Defendants' Motions. An order follows.

### I. Factual and Procedural Background[2]

This case concerns the fees charged for shipping services over an extended period of time. Plaintiff, Gotham Distributing Corporation ("Gotham"), a Pennsylvania corporation, operates OLDIES.com, one of the largest music and movie mail-order companies

---

[1] Defendants' Motion *in Limine* (Doc. No. 42), which Plaintiff responded to within their Omnibus Response (Doc. No. 46), will be decided in a separate order.

[2] Facts for this section are taken from the Complaint (Doc. No. 1).

in the United States. Gotham entered into contracts with Defendants United Parcel Service Co., Inc.[3] ("UPS, Inc.") and UPS Expedited Mail Services, Inc. ("UPS-MI"), both of which are organized under Delaware law and have their principal places of business in Georgia, whereby the Defendants would provide shipping services to Gotham in exchange for payment. The parties agreed on shipping charges based on package measurements and shipping classifications. This service was provided correctly up until about August 2012, when Defendants began reclassifying some of Gotham's products and charging higher fees to ship them. As a result of the improper reclassification and adjusted fees, Gotham paid more for the services than they had previously agreed to pay. Gotham alleges that Defendants provided no notice of the changed classification.

    Gotham filed this action on October 28, 2014. Gotham alleges that Defendants' reclassification of the packages and their failure to notify Gotham of the reclassification prior to shipping at the higher cost constitute a breach of contract (Count I). Gotham also alleges that Defendants were unjustly enriched by this overpayment (Count II). Finally, Gotham alleges that it relied on Defendants to perform honestly and in good faith, and that it refrained from

---

[3] Defendants note that while Gotham refers to "United Parcel Service, Co., Inc." in the Complaint, the proper entity is "United Parcel Service, Inc."

entering into other transactions and contracts in reliance on the Defendants' representations (Count III). Gotham seeks damages in excess of $150,000.

Defendants filed Motions for Summary Judgment on March 7, 2016. Plaintiff filed its Response in Opposition on April 6, 2016. Defendants filed their Replies on April 15, 2016, and Plaintiff filed a Sur-reply on May 5, 2016. This issue being fully briefed, it is now ripe for decision.

## II. Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

## III. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material when its resolution 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Justofin v. Metropolitan Life Ins. Co.</u>, 372 F.3d 517, 521 (3d Cir. 2004) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). In making this determination, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to

the party opposing the motion." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (alteration in original) (internal quotation and citation omitted). A court must accept the non-movant's version of the facts as true, and resolve conflicts in the non-movant's favor. See Big Apple BMW, Inc. v. BMW of N. Amer., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## IV. Discussion

Defendant UPS, Inc. argues that it is entitled to summary judgment because Gotham has not asserted any claims against it and it does not exercise control over the subsidiary entity's alleged wrongdoing. Defendant UPS-MI argues that it is entitled to summary judgment for the following reasons: 1) the claims are barred by the voluntary payment doctrine; 2) Gotham was contractually barred from disputing charges after 180 days; 3) Gotham cannot prove breach of contract and has no reliable assessment of damages; 4) there can be no unjust enrichment or promissory estoppel because this is a contractual dispute. We will address each argument in turn.

### A. Parent Company Liability

"[A] parent company is not liable for the actions of its subsidiaries unless the parent company itself has engaged in wrongdoing, or exercises control over the subsidiary entity." Travelers Indem. Co. V. Cephalon, Inc., 32 F.Supp.3d 538, 556 (E.D.

4

Pa. 2014) (citing In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 341 n.44 (3d Cir. 2010)). UPS, Inc. argues that it is a parent company over UPS Small Package and UPS-MI and that Gotham has not alleged that UPS, Inc. has engaged in any wrongdoing, or that it exercises any control over these subsidiary entities. UPS, Inc. notes that it does not ship packages or mail or enter into contracts with customers such as Gotham, and that the media mail reclassification issue is solely under the purview of UPS-MI.

Plaintiff argues Emeka Uzoigwe is an employee with UPS, Inc., and that an email from Mr. Uzoigwe shows that UPS, Inc. was directly involved with billing, invoicing, and resolving problems therewith. Doc. No. 46 at 18. Mr. Uzoigwe's email reads in its entirety:

> From: <euzoigwe@ups.com>
> Date: Mon, Apr 22, 2013 at 5:27 PM
> Subject: FW: Gotham's Invoices
> To: ken@oldies.com
>
> Ken,
>
> This will be the first of three e-mails. Attached are some invoices from last year and the first quarter of this year. Mail Innovations provided an invoice from each month to review. It looks like Parcel Select didn't start becoming much of an issue until last August.
>
> Let me know if you have any questions.
>
> Regards,
>
> Emeka

5

    Emeka Uzoigwe
    UPS Worldwide Services
    Account Manager
    Chesapeake District
    euzoigwe@ups.com
    215-[xxx]-[xxxx]

Doc. No. 46-11, Ex. K. Plaintiff's Omnibus Response includes the text of this email, with the last line of the first paragraph (starting "It looks like...") and "UPS Worldwide Services" bolded, apparently to support the claims that 1) this statement admits culpability and 2) Mr. Uzoigwe is an employee of UPS, Inc. Doc. No. 46 at 18.

 UPS, Inc. asserts that Mr. Uzoigwe works for UPS Small Package, another subsidiary of UPS, Inc., and not the parent company, UPS, Inc. Doc. No. 49 at 4 of 6. The brief cites the deposition of Sam Sharabi, Area Sales Manager for UPS-MI, to support this assertion. That section of the deposition, however, states that Mr. Uzoigwe is with UPS Small Package and not UPS-MI. Sharabi Dep. (Doc. No. 49-1) at 76:10-12. Mr. Sharabi does not indicate that UPS Small Package and UPS, Inc. are not the same entity, or that Mr. Uzoigwe is not employed by UPS, Inc. Id.; See also id. at 105:16-23, 105:24-106:5.

 In the various depositions that are part of the record, attorneys and witnesses for both parties refer to UPS Small Package and UPS, Inc. as the same entity. See Oakley Dep. (Doc. No. 41-10)

at 14:16-24 (indicating that small package and "traditional UPS" are the same entity); Jacobson Dep. (Doc. No. 41-9) at 69:18-70:5; Sharabi Dep. at 15:14-22; Britner Dep. (Doc. No. 46-1) at 73:6-13. In the deposition of Kenneth Jacobson, the attorneys for the Plaintiff and the Defendants agree that the "defendants entirely" refers to "Expedited Mail Services and UPS small package." Jacobson Dep. at 11:2-12. The same attorney represents both UPS-MI and UPS, Inc. In its brief in support of its Motion for Summary Judgment, UPS-MI also refers to "UPS Package" as the same as United Parcel Service, Inc. Doc. No. 41 at 6 of 16; See also Sharabi Aff. (Doc. No. 41-1) at ¶19; Marino Aff. (Doc. No. 41-7) at ¶¶1, 3.

The confusion over which entity is involved in this case is exacerbated by the parent company and the subsidiary apparently having the same name. The Complaint indicates that the Defendant United Parcel Services, Inc. is incorporated in Delaware. Compl. ¶2. Mr. Sharabi's affidavit in support of UPS, Inc.'s Motion indicates that UPS Parcel Service, Inc. is a parent corporation over all UPS entities, including United Parcel Service, Inc., with the former organized under the laws of Delaware and the latter organized under the laws of Ohio. Sharabi Aff. (Doc. No. 40) at ¶¶4, 5. Nevertheless, given the extent to which the parties use UPS Package; UPS Small Package; UPS, Inc.; and United Parcel Service, Inc.

interchangeably, we find that the Defendant UPS, Inc. has not met its burden to show there is no genuine issue of material fact about its involvement in the facts underlying this cause of action.

UPS, Inc. also argues that there is no evidence that UPS Package was involved in the alleged wrongdoing. From the record before us, we cannot agree. Mr. Sharabi testified that UPS-MI worked with UPS Small Package to address Gotham's billing problems and to make a new billing plan for Gotham. Sharabi Dep. 103:9-104:8. Although the email from Mr. Uzoigwe references UPS-MI's invoices, and not any billing practices of UPS Package, it does appear that he at least reviewed the invoice amounts and he seemed to be involved in resolving the discrepancy. Doc. No. 46-11, Ex. K. While we agree with UPS, Inc. that nothing in that email constitutes an "admission of culpability," it nevertheless indicates that Mr. Uzoigwe may have been involved in the billing issue. The statements of Gotham's Controller that he was not aware of a basis for claims against UPS Small Package refers to his personal knowledge and is not the same as an admission by the Plaintiff that there is no basis for such claims. See Jacobson Dep. 24:14-19.

Because there is evidence in the record that UPS Package and UPS-MI worked together on Gotham's billing issues, which is the keystone of this action, we find that Defendant UPS, Inc. has not

8

met its burden to show no issue of material fact exists as to UPS Package's involvement in the allegedly unlawful billing.

For the foregoing reasons, we deny UPS, Inc.'s Motion for Summary Judgment.

### B. Voluntary Payment Doctrine

UPS-MI argues that Gotham's claims are barred by the voluntary payment doctrine. Under Pennsylvania law, the voluntary payment doctrine provides that when "one voluntarily and without fraud or duress pays money to another with full knowledge of the facts, the money paid cannot be recovered." Acme Markets, Inc. v. Valley View Shopping Ctr., Inc., 342 Pa.Super.567, 569 (1985) (citing Ochiuto v. Prudential Ins. Co. of Am., 356 Pa. 382, 384 (1947)).

In Acme Markets, the Pennsylvania Superior Court found that the tenant plaintiff could not recover payments to its landlord when the plaintiff erroneously believed it had a legal obligation to make those payments. Id. at 571. The court determined that this "mistake was one of law" because the plaintiff was mistaken as to the interpretation of its contract with the landlord. Id. The court noted that "the rule disallowing recovery when payments have been made under a mistake of law is supported as a corollary of the criminal law maxim that one is presumed to know the law and that to hold otherwise would render legal accountability unenforceable." Id.

at 569.

In Liss & Marion, P.C. v. Recordex Acquisition Corp., 603 Pa. 198 (2009), the Pennsylvania Supreme Court found that when the defendant party overcharged the plaintiff and misrepresented the product in the invoices, the voluntary payment doctrine did not apply. Id. at 214-15. In that case, the court found the claim was not based on a mistake of law, i.e., on ignorance of the proper rates, but instead it was a mistake of fact about the product itself. Id. at 215. The plaintiff failed to discover the overcharge because of the other party's misrepresentation. Id.

UPS-MI argues that this situation is distinguishable from Liss & Marion because Gotham received invoices that clearly indicated that the packages were shipped Parcel Select. Doc. No. 51 at 6 of 14, n.3. Because each of the 47 invoices accurately reflected the higher cost and changed classification, UPS-MI argues, there is no factual mistake and the voluntary payment doctrine applies. We are not convinced. According to Gotham, UPS-MI "agreed to ship packages per Gotham's designations." Pl.'s Response to Interrogatories (Doc. No. 41-11 at 18-19 of 20). If this is true, Gotham would expect the invoices to both 1) accurately reflect Gotham's classification for the packages and 2) accurately reflect the actual shipment classification. Here, the invoices only reflected the latter. UPS-

10

MI's changing the classification is a misrepresentation similar to the one at issue in <u>Liss & Marion</u>. Gotham's mistake about the accuracy of the rates, then, is a mistake of fact, not one of law. This is distinguishable from a payment that is made under belief that there is a legal obligation to make the payment at all, resulting from a misinterpretation of the contract, as was the case in <u>Acme Markets</u>.

We find this case to be more similar to <u>Liss</u>, in which the courts found that the voluntary payment doctrine did not apply. Accordingly, we deny Defendant UPS-MI's Motion for Summary Judgment on this ground.

### C. Contract Limiting Recovery

UPS-MI asserts that some of Gotham's claims are barred pursuant to the 180-day notice period on the shipment control forms. The reverse side of these forms included the following provision:

> For any claim for an invoice adjustment (including, but not limited to, adjustment of charges based on an incorrect rate, or type of service, overcharge, refund due to a duplicate payment), Client must notify UPS-MI of the claim within 180 days of receiving the contested invoice, or any billing dispute is waived. A partial payment against an invoice is not considered a request for an invoice adjustment.

Sharabi Aff. (Doc. No. 41-1) at ¶ 16. UPS-MI argues that because Gotham did not dispute the charges until on or around May 10, 2013, this provision means that Gotham waived the billing dispute for any

billing error that occurred more than 180 days prior; that is, before November 6, 2012.

Contractual suit limitations are generally allowed under Pennsylvania law. See Patel v. Am. Safety Indem. Co., No. 15-927, 2016 WL 520994, at *4 (W.D. Pa. Feb. 10, 2016) (citation omitted). The issue here is the validity of the shipment control forms. Gotham argues that these forms were not signed by a duly authorized representative, so they have no legal effect. They also argue that under the best evidence rule, UPS-MI is required to produce the original signed forms, and they have failed to do so here.

Gotham's co-owner Jerry Greene states that Steve Oakley was not authorized to sign the shipment control forms containing the 180-day dispute limitation. Decl. of Jerry Greene (Doc. No. 46-8) at ¶5. This contradicts the statement given by Ken Jacobson, Gotham's 30(b)(6) corporate designee, that Mr. Oakley was so authorized. Jacobson Dep. at 128:4-11. UPS-MI urges the court to disregard Mr. Greene's Declaration.

Rule 30(b)(6) provides, in relevant part:

> In its notice or subpoena, a party may name as the deponent a ... corporation ... and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more ... persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify .... The persons designated must testify about information known or

reasonably available to the organization.

Fed. R. Civ. P. 30(b)(6). This Court has found that the testimony of a Rule 30(b)(6) representative "is not a judicial admission absolutely binding" on the party they represent. State Farm Mut. Ins. Co. v. New Horizont, Inc., 250 F.R.D. 203, 211 (E.D. Pa. 2008) (quoting 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2103 (Supp. 2007)). Even so, it may be proper in some cases to disregard a later affidavit "where the nonmovant in a motion for summary judgment submits an affidavit which directly contradicts an earlier [Rule 30(b)(6)] deposition and the movant relied upon and based its motion on the prior deposition[.]" Id. (alteration in the original) (internal quotation omitted). This is because "a non-movant on a motion for summary judgment should not be able to defeat the motion by switching its prior position at the last minute." Joseph v. Pa., Dept. of Envtl. Prot., No. 06-4916, 2009 WL 3849696, at *4 (E.D. Pa. Nov. 16, 2009).

There is no dispute that Mr. Jacobson was a corporate designee of Gotham. Jacobson Dep. at 11:14-17. Although the Second Amended Notice of Deposition listed Gotham's signing of the UPS Shipment Control Forms as one of the topics about which Mr. Jacobson would

13

be designated to testify (Doc. No. 51 at 12 of 14), Mr. Jacobson expressly stated that he was unprepared to testify on that topic. Jacobson Dep. at 12:23-13:12. This was the only topic on which he stated he did not have sufficient knowledge to testify, and he offered the name of another Gotham employee who may be able to find someone able to testify on the issue. Id. at 13:7-14:6. Given this, we do not find that his statements on the invoices and who was authorized to sign the invoices on behalf of Gotham ought to preclude the consideration of the affidavit of Mr. Greene. Therefore, there is evidence to support Gotham's claim that Mr. Oakley was not authorized to sign the invoices and UPS-MI has not met its burden on this issue. Accordingly, UPS-MI's Motion for Summary Judgment based on the contractual suit limitation is denied.[4]

### D. Breach of Contract and Damages

UPS-MI states that while it had a contractual relationship with Gotham for approximately seven years, Gotham is unable to prove the "foundation of its case: that it tendered mail to UPS-MI for shipment that it properly designated as media mail." Doc. No. 41 at 13 of 16. In support of this assertion, UPS-MI points to its Motion

---

[4] Because we find there is a genuine dispute about the validity of the signature on the invoices, we do not need to consider whether the best evidence rule requires that UPS-MI produce the original invoices.

14

*in Limine* requesting this Court preclude Plaintiff from introducing certain electronic files to prove content (Doc. No. 45) and states that this is the only evidence Gotham has provided. We do not need to address the Motion *in Limine* at this juncture. We find that there is sufficient evidence in the record other than the electronic files at issue in the Motion *in Limine*, including testimony from UPS-MI corporate designees, that supports Plaintiff's theory of the case. See, e.g., Britner Dep. at 38:5-11, 106:6-14; Sharabi Dep. at 111:10-112:2; Doc. No 46-11, Ex. F. Similarly, there is sufficient evidence related to damages to indicate that Gotham will be able to allege a non-speculative calculation of its damages before a jury. See, e.g., Doc. No. 46-10, Ex. J. Accordingly, we deny summary judgment on this ground.

### E. Unjust Enrichment and Promissory Estoppel

UPS-MI argues that Gotham cannot make a claim for unjust enrichment or promissory estoppel because it has a contract with UPS-MI. Pennsylvania law precludes recovery on an unjust enrichment claim when a valid contract exists. See Halstead v. Motorcycle Safety Found. Inc., 71 F.Supp.2d 455, 459 (E.D. Pa. 1999). Similarly, "a promissory estoppel claim can only exist in the absence of a contract." Iversen Baking Co., Inc. v. Weston Foods, Ltd., 874 F.Supp. 96, 102 (E.D. Pa. 1995). The finding of a valid

contract limits damages to those provided for in the contract itself. Halstead, 71 F.Supp. 2d at 459.

Gotham offers a confusing argument that it has no contract with UPS-MI, and that instead UPS-MI is bound by its obligations of good faith and fair dealing. Doc. No. 46 at 25.[5] Under Pennsylvania law, the implied covenant of good faith and fair dealing applies only when there is a valid contract. See Kamco Indus. Sales, Inc. v. Lovejoy, Inc., 779 F.Supp.2d 416, 425-26 (E.D. Pa. 2011); Donahue v. Fed. Exp. Corp., 753 A.2d 238, 242 (Pa. Super. 2000). It is intended "to harmonize the reasonable expectations of the parties with the intent of the contractors and the terms in their contract" and "to prohibit a party from taking advantage of gaps in a contract." Kamco, 779 F.Supp. 2d at 426 (internal quotations and citations omitted). A cause of action for a breach of the implied covenant of good faith and fair dealing is a breach of contract action. Id. at 426, n.8.

Although Gotham's argument that there is an obligation of good faith and fair dealing for a contract that does not exist is confused, Gotham is correct that UPS-MI has failed to produce a

---

[5] Although this argument is made in Gotham's section disputing UPS-MI's argument about the voluntary payment doctrine, it disputes the claim that Gotham and UPS-MI had a contract. There is no separate section in their Omnibus Response concerning the promissory estoppel or unjust enrichment claims.

contract. Parties are free to pursue promissory estoppel and unjust enrichment claims in the alternative in case they are unable to prove the existence of a contract. Halstead, 71 F.Supp. 2d at 459. It is UPS-MI's burden to show they are entitled to judgment as a matter of law; by failing to show there is a valid contract, it has not met that burden here. Because the argument that it should be granted summary judgment on the counts related to promissory estoppel and unjust enrichment depends on the existence of a contract, we deny summary judgment on Counts II and III.

## V. Conclusion

For the foregoing reasons, the Defendants' Motions for Summary Judgment are denied. An order follows.